UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SCANSOFT, INC. )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>ART ADVANCED RECOGNITION )<br>TECHNOLOGIES, INC. )<br>)<br>Defendant. )<br>) | Civil Action No. 04-10840 PBS |

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR ENTRY OF
PROTECTIVE (CONFIDENTIALITY) ORDER
-AND-
CROSS-MOTION FOR ENTRY OF PROTECTIVE ORDER**

Plaintiff ScanSoft, Inc. ("ScanSoft"), submits this memorandum of law in support of its cross-motion for entry of protective order and its opposition to defendant's motion for entry of protective order (the "Motion") pursuant to Rule 26(c)(7) of the Federal Rules of Civil Procedure.

**INTRODUCTION**

On April 27, 2004, ScanSoft brought this patent infringement action against ART Advanced Recognition Technologies, Inc. ("ART"). In the ensuing months, the parties have served upon one another interrogatories and numerous requests for the production of documents

and things. Each party, in its response to these discovery requests, has agreed to respond and produce responsive documents subject to the entry of a suitable protective order.[1]

Counsel for ScanSoft first provided counsel for ART with a proposed form of protective order on August 11, 2004. The parties proceeded to negotiate various terms and ultimately reached agreement as to each term, with one exception. ART wishes to preclude in-house counsel from having access to information designated "HIGHLY CONFIDENTIAL." For the reasons set forth below, ScanSoft requests that the Court enter the Protective Order in the form attached as Exhibit A to its Motion, which differs from the terms agreed upon by the parties only to the extent it gives their in-house counsel and outside counsel equal access to information designated "HIGHLY CONFIDENTIAL."

## **ARGUMENT**

**I.   BECAUSE IN-HOUSE COUNSEL ARE BOUND BY THE SAME PROFESSIONAL OBLIGATIONS AS RETAINED COUNSEL AND ARE NO MORE LIKELY TO DISCLOSE PROTECTED INFORMATION, THEY SHOULD BE TREATED THE SAME.**

Courts have consistently recognized that in-house counsel who are actively involved in a case must, like outside counsel, have access to all necessary information that is relevant to the litigation. Thus in each of the following cases, the court specifically held that protective orders should be entered giving in-house counsel access to the types of confidential materials at issue here: *Glaxo Inc. v. Genpharm Pharmaceuticals, Inc.*, 796 F. Supp. 872 (E.D.N.C. 1992); *Boehringer Ingelheim Pharmaceuticals, Inc. v. Hercon Laboratories Corp.*, 8 U.S.P.Q.2d 1166 (D.Del. 1990); and *Safe Flight Instrument Corp. v. Sundstrand Data Control Inc.*, 682 F. Supp. 20 (D.Del. 1988).

---

[1] In an attempt to move discovery along, pending the entry of a protective order in this

The reasoning behind these cases is two-fold. First, in-house counsel are bound by the same professional obligations as retained counsel and face the same sanctions if they violate a protective order. Second, there is no reason to believe that in-house counsel are any more likely to disclose an adversary's highly confidential information than are outside counsel. As the Federal Circuit has noted:

> Denial or grant of access, however, cannot rest on a general assumption that one group of lawyers are more likely or less likely inadvertently to breach their duty under a protective order... Like retained counsel, ... in-house counsel are officers of the court, are bound by the same Code of Professional Responsibility, and are subject to the same sanctions. In-house counsel provide the same services and are subject to the same types of pressures as retained counsel. The problem and importance of avoiding inadvertent disclosure is the same for both.

*U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1468 (Fed. Cir. 1984) (rejecting blanket ban imposed by the Court of International Trade on in-house counsel's access to confidential materials). In other words, all counsel, whether in-house or retained, are obligated to abide by the terms of a protective order or be subject to sanctions handed down by this Court. There is no basis to contend that in-house counsel is any more likely to breach their professional obligations than retained counsel.

**II.   SCANSOFT'S IN-HOUSE COUNSEL ARE NOT INVOLVED IN COMPETITIVE DECISION-MAKING.**

In *U.S. Steel*, the Federal Circuit held that the critical factor in determining whether to deny in-house counsel access to confidential information is whether in-house counsel is involved in "competitive decision-making." *See also Glaxo Inc. v. Genpharm Pharmaceuticals, Inc.*, 796 F. Supp. 872, 874 (E.D.N.C. 1992) (stating that whether in-house counsel is involved in

---

case, the parties have agreed to produce all documents on an "attorneys' eyes only" basis.

"competitive decision-making" is the "decisive factor" and holding that in-house counsel was entitled to access to confidential discovery materials). The phrase "competitive decision-making" is considered to be

> [S]horthand for a counsel's activities, association, and relationship with a client that are such as to involve counsel's advice and participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor.

*U.S. Steel*, 730 F.2d at 1468 n. 3.

ScanSoft's in-house counsel are not involved in the day-to-day aspects of ScanSoft's competitive business operations and do not make competitive business decisions, let alone resolve matters of competitive marketing strategy or product development. *See* Declaration of John M. O'Toole, ¶¶ 6-7, attached as Exhibit 1. In the circumstances of this case, ScanSoft's in-house counsel are sufficiently insulated from "competitive decision-making" such that there is no reason to deny them access to "HIGHLY CONFIDENTIAL" materials. *See, e.g., Glaxo*, 796 F.Supp. at 874 (granting in-house counsel access to confidential discovery information based on in-house counsel's representation that he had no involvement in and gave no advice to Glaxo "about competitive decisions such as pricing, scientific research, sale or marketing"); and *Safe Flight Instrument Corp. v. Sundstrand Data Control Inc.*, 682 F. Supp. 20, 22 (D. Del. 1988) (granting in-house counsel access to confidential discovery materials based on similar representations).

### III. THE PROTECTIVE ORDER PROVIDES ADEQUATE SAFEGUARDS AGAINST DISCLOSURE OF HIGHLY CONFIDENTIAL INFORMATION.

Additionally, the Protective Order, as drafted, includes adequate safeguards to protect against the improper use and disclosure of highly confidential information by <u>any</u> counsel, whether in-house or retained. The Protective Order provides that:

- The parties shall use PROTECTED INFORMATION[2] only for the purpose of this litigation (Exhibit A to ScanSoft's Motion, ¶ 5);

- The disclosure of PROTECTED INFORMATION . . . shall be limited to the disclosure reasonably necessary for such person's or entity's activities in connection with this Litigation (*id.* ¶ 12);

- [PROTECTED INFORMATION] shall be held in confidence by each party to whom it is disclosed, and shall be carefully maintained so as to preclude access by persons who are not entitled to receive such information (*id.* ¶ 14);

- Any attorney, consultant, or employee of any law firm who sees, reviews, or discusses the subject matter of a disclosing party's TECHNICAL HIGHLY CONFIDENTIAL INFORMATION shall not participate in the prosecution of any patent application on behalf of the receiving party (including any parents, subsidiaries, divisions, successors, or affiliates of the receiving party) relating to the subject matter of the disclosing party's TECHNICAL HIGHLY CONFIDENTIAL INFORMATION for a period of three (3) years following the termination of this litigation . . . (*id.* ¶16);

- [A]ny attorney, consultant, or employee of any law firm who sees, reviews, or discusses the subject matter of the disclosing party's TECHNICAL HIGHLY CONFIDENTIAL INFORMATION shall in no way use that TECHNICAL HIGHLY CONFIDENTIAL INFORMATION in the prosecution of any patent application on behalf of the receiving party without the disclosing party's consent (*id.*);

- Any party filing with the Court any motion, brief, exhibit, or other document in this Litigation that incorporates, contains, or discloses the contents of PROTECTED INFORMATION shall mark such document in accordance

---

[2]   Pursuant to the agree-upon terms of the Protective Order, "PROTECTED INFORMATION" includes "HIGHLY CONFIDENTIAL INFORMATION" (See Exhibit A to ScanSoft's Motion, ¶ 1).

5

- with subparagraph 3(a) above, and shall file the document under seal . . . (*id.* ¶18);

- Within sixty (60) calendar days after final judgment or final appeal in this Litigation (if an appeal is taken), each party shall return to the producing party all . . . PROTECTED INFORMATION, and shall destroy in whatever form stored or reproduced, all other documents and tangible materials, items or things, including, but not limited to, pleadings, correspondence, memoranda, notes and other work-product materials, which contain or refer to PROTECTED INFORMATION (*id.* ¶27).

In light of these protections against deliberate or inadvertent disclosure of protected information, all counsel involved in this action, including ScanSoft's in-house counsel, should have equal access to the highly confidential discovery materials produced by the parties in this case. *See, e.g., Boehringer Ingelheim Pharmaceuticals, Inc. v. Hercon Laboratories Corp.,* 18 U.S.P.Q.2d 1166, 1168 (D.Del. 1990) (holding that "the protections against injury provided by the surrounding circumstances and the design of the protective order are determinative as to which individuals should be given access to confidential information" and holding that plaintiff's in-house counsel were entitled to access to confidential discovery materials).

### IV. DENYING IN-HOUSE COUNSEL ACCESS TO HIGHLY CONFIDENTIAL INFORMATION WOULD UNDULY PREJUDICE SCANSOFT.

The Protective Order also should be entered in the form attached as Exhibit A to ScanSoft's Motion because prohibiting the parties from sharing highly confidential information with in-house counsel would create a severe and unwarranted burden on ScanSoft's prosecution of this matter. *See Caterpillar, Inc. v. Detroit Diesel Corp.,* 1996 U.S. Dist. LEXIS 20575 (N.D. Ind. 1996) (permitting Caterpillar's in-house counsel access to confidential information because, *inter alia*, denial of access to such information would prejudice Caterpillar). To effectively litigate this case, all members of ScanSoft's litigation team must be in a position to review and discuss all matters pertinent to the litigation. ScanSoft's in-house counsel are an important part

6

of that team. *See* Declaration of John M. O'Toole, ¶ 4, attached as Exhibit 1. In fact, in-house counsel are the persons responsible for any major strategy decisions concerning this lawsuit, including the recommendation to file it, the development of the strategy in prosecuting it, and the day-to-day work on the case. *See id.; see Boehringer*, 18 U.S.P.Q.2d at 1168 (issuing protective order which permitted disclosure of confidential information to in-house counsel when in-house counsel were "the persons responsible for any major decisions concerning this lawsuit"). Absent ready access to highly confidential information, ScanSoft's in-house counsel cannot effectively participate in key decision-making in this case. *Id.* at ¶ 5.

A simple example illustrates this point. The parties agree that "commercially sensitive business information, documents or things" may be designated as HIGHLY CONFIDENTIAL INFORMATION (Exhibit A to ScanSoft's Motion ¶ 2(c)), and motions, briefs, exhibits, or other documents filed with the Court which make reference to such information are to be filed under seal (*id.* ¶ 18). If this were to occur in this case, under the form of Protective Order sought by ART, ScanSoft would be prohibited from providing in-house counsel with a complete copy of key legal memoranda, on which the input of in-house counsel would be critical. Similar problems could arise in settlement discussions, which are frequently based on confidential sales figures.

ScanSoft's in-house counsel cannot make informed decisions about the handling of this case if they do not have access to all relevant information. As such, the need of ScanSoft's in-house counsel to have access to highly confidential materials substantially outweighs any theoretical risk of the inadvertent disclosure or improper use of such information.

## **CONCLUSION**

For the foregoing reasons, ScanSoft respectfully requests that the Court enter the Protective Order attached as Exhibit A to its Motion for Entry of Protective Order.

Dated:  October 26, 2004

SCANSOFT, INC.
By its attorneys,

/s/ Jack C. Schecter
Lee Carl Bromberg, BBO #058480
Robert M. Asher, BBO #022865
Julia Huston, BBO #562160
Jack C. Schecter, BBO#652349
BROMBERG & SUNSTEIN LLP
125 Summer Street
Boston, MA 02110-1618
Telephone:  (617) 443-9292
Facsimile:  (617) 443-0004
Email:  jschecter@bromsun.com

02639/00550   341496.1