IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| SCANSOFT, INC. | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 04-10840-PBS |
| ART ADVANCED RECOGNITION TECHNOLOGIES, INC. | ) ) ) ) | |
| Defendant. | ) ) ) | |

**ART'S OPPOSITION TO SCANSOFT'S CROSS-MOTION
FOR ENTRY OF PROTECTIVE (CONFIDENTIALITY) ORDER**

The parties agree on the terms of the protective order, with one exception – whether plaintiff ScanSoft, Inc. ("ScanSoft") should be allowed to show "Highly Confidential" business-related documents to ScanSoft's in-house counsel. Defendant ART Advanced Recognition Technologies, Inc. ("ART") has filed a motion for entry of a protective order that allows ScanSoft's counsel access to "Confidential" documents, but not to business-related "Highly Confidential" documents. ScanSoft, on the other hand, opposes ART's motion and instead, seeks entry of a protective order that gives its in-house counsel access to *all* documents.

ScanSoft's in-house counsel should have no right or need to access ART's "Highly Confidential" business-related documents. No matter how ScanSoft tries to portray the situation, the facts demonstrate that there would be an unacceptable risk of inadvertent disclosure of ART's highly sensitive business information if ScanSoft's in-house counsel was given access to this information:

1. **ScanSoft's in-house counsel is involved with ScanSoft's patent prosecution.** Although the declaration of ScanSoft's in-house counsel in silent on the matter, ScanSoft has informed ART's counsel that ScanSoft's in-house counsel oversees the prosecution of ScanSoft's patent portfolio. It is impossible for ScanSoft to suggest that legal advice provided by ScanSoft's in-house counsel is not inextricably intertwined with the company's business judgment decisions on product design, scientific research, and strategic and tactical decisions as to what patents to seek.

2. **ScanSoft's in-house counsel advises on ScanSoft's business transactions.** The signed declaration submitted by ScanSoft's in-house counsel also evidences his close link to ScanSoft's competitive business decisions, including his admission that his duties involve "advising [ScanSoft's] business people concerning the legality of transactions." See O'Toole Decl. at 2.

ScanSoft's stated need for its in-house counsel to have access to ART's "Highly Confidential" information is unconvincing. Of course, ScanSoft will be able to make "informed decisions about the handling of this case" based on: (1) ScanSoft's in-house counsel having access to ART's "Confidential" information and all non-confidential information; (2) ScanSoft's trial counsel (Bromberg & Sunstein LLP) and ScanSoft's independent experts having access to ART's "Highly Confidential" information; and (3) the parties providing redacted copies of any pleadings filed under seal with the Court.

Importantly, under ScanSoft's proposed protective order, because ART has no in-house lawyer, ART would have no reciprocal right to share ScanSoft's "Highly Confidential" information with one of its own in-house representatives. *Notably, ScanSoft has refused to allow ART to designate any in-house person to have reciprocal access to ScanSoft's highly technical information, regardless of their company role.* This is fundamentally unfair and only supports ART's belief that this case was brought frivolously and with improper purpose.

The law on this issue is clear: where, as here, an attorney is involved in the competitive decision-making of a company, courts deny access to confidential materials under a protective order, because of an unacceptable risk of inadvertent disclosure of the protected material.

Accordingly, the Court should deny ScanSoft's motion and enter the protective order attached to *ART's* Motion for Entry of a Protective (Confidentiality) Order.

## ARGUMENT

I. **THE COURT SHOULD NOT ENTER ANY PROTECTIVE ORDER IN THIS CASE THAT ALLOWS DISCLOSURE OF "HIGHLY CONFIDENTIAL" INFORMATION TO SCANSOFT'S IN-HOUSE COUNSEL.**

   A. **The Parties Agreed to a Protective Order that Properly Limits Access to "Highly Confidential" Information to Outside Counsel.**

Protective orders, like the one the parties agreed to here and is attached to ART's Motion for Entry of a Protective (Confidentiality) Order, properly limit access to confidential business information to *outside counsel* retained by the parties where *in-house counsel* "has a part in the type of competitive decision-making that would involve the potential use of the confidential information." Sullivan Mktg., Inc. v. Valassis Communications, Inc., No. 93-CIV-6350, 1994 WL 177795, at *2 (S.D.N.Y. May 4, 1994) (denying access to in-house counsel of confidential material) (copy attached as Ex. A); see also Brown Bag Software v. Symantec Corp., 960 F.2d 1465, 1472 (9th Cir. 1992) (affirming denial of access to in-house counsel of confidential material); Ball Mem'l Hosp. v. Mutual Hosp. Ins., 784 F.2d 1325, 1346 (7th Cir. 1986) (same).

In restricting the disclosure of confidential information, courts recognize that in-house counsel often participates in the *business decision-making process* of a company, and cannot effectively perform their responsibilities without risking inadvertent disclosure of the confidential information. See Brown Bag, 960 F.2d at 1470. Courts have particularly cautioned that *in-house counsel* should not have access to confidential competitive information that could defeat the interests of preserving competition. See, e.g., Ball, 784 F.2d at 1346. In fact, the risk of harm from inadvertent disclosure by in-house counsel of other parties' confidential information is so well established that courts have, *sua sponte*, raised the issue of limiting

disclosure to *only* trial counsel and independent experts where it appears that harm could result without such a limitation.  See, e.g., Coca-Cola Bottling Co. of Shreveport, Inc. v. Coca-Cola Co., 107 F.R.D. 288, 300 (D. Del. 1985).

### B. ScanSoft's In-house Counsel is Involved in ScanSoft's Prosecution of Patents.

ScanSoft's outside counsel has told ART that ScanSoft's in-house counsel is involved in the prosecution of ScanSoft's patents.  It therefore defies credulity to believe that ScanSoft's in-house counsel does not provide competitive decision-making advice to ScanSoft.  Indeed, one of the goals of obtaining patent protection is to block competition.

The case law cited by ScanSoft explains that competitive decision-making includes both (1) "product design," U.S. Steel Corp. v. United States, 730 F.2d 1465, 1468 (Fed. Cir. 1984), and (2) "scientific research," Safe Flight Instrument Corp. v. Sunstrand Data Control, Inc. 682, F.Supp. 20, 22 (D. Del. 1988).  There is nothing more closely related to *product design* and *scientific research* than involvement in the *prosecution of a company's patent portfolio*.  Moreover, involvement in patent prosecution includes strategic and tactical decisions as to what patent protection to seek.  Because ScanSoft's in-house counsel is involved with decision-making on ScanSoft's patent portfolio, it is impossible to suggest that ScanSoft's in-house counsel is not involved with the ScanSoft's business judgment decisions.

### C. The Declaration Submitted by ScanSoft's In-house Counsel Evidences His Close Link to ScanSoft's Competitive Decision-making.

ScanSoft's in-counsel should also be excluded from any protective order in this case because the declaration submitted by ScanSoft's in-counsel clearly evidences his close link to ScanSoft's competitive decision-makers.  In the declaration, ScanSoft's in-house counsel admits that his responsibilities include "advising [ScanSoft's] business people concerning the legality of transactions."  See O'Toole Decl. at 2.  Importantly, this statement demonstrates that ScanSoft's

in-house counsel provides legal advice on business matters *beyond* simply litigation.  Because ScanSoft's in-house counsel is involved with advising *ScanSoft's business people concerning the legality of transactions*, it is impossible to suggest that ScanSoft's in-house counsel is not involved with the company's business judgment decisions.

The fact that ScanSoft's in-house counsel claims to have no involvement in ScanSoft's competitive business-making decisions should be disregarded.  In a similar case, Sullivan Mktg., 1994 WL 177795, at *1 (copy attached as Ex. A), a party sought to allow its in-counsel access to "restricted" confidential information based upon his sworn statement that he did not have "input on matters relating to production or sales, except when a legal issue is raised. . . ." Id. at *3.  However, the court concluded that the risk of inadvertent disclosure was too great to allow in-house counsel access to the "restricted" confidential information:

> It is often difficult to draw the line between legal and business advice. … "[I]t is very difficult for the human mind to compartmentalize and selectively suppress information once learned, no matter how well-intentioned the effort may be to do so." F.T.C. v. Exxon Corp., 636 F.2d 1336, 1350 (D.C. Cir. 1980).  Given the extent of [in-house counsel's] involvement in strategy meetings, such compartmentalization would be nigh impossible.

Id.   In short, granting access to ART's "Highly Confidential" information to ScanSoft's in-house counsel would give rise to a high risk of inadvertent disclosure.

        **D.**      **The Cases Cited By ScanSoft Are Distinguishable From the Facts Here.**

First, in the cases cited by ScanSoft, disclosure to in-house counsel was permitted only where counsel was insulated from the competitive decision-making process in such a way that it was unlikely that inadvertent disclosure could occur, which is not the case here.  See Boehringer Ingelheim Pharms., Inc. v. Hercon Labs. Corp., Civ. No. 89-484-CMW, 1990 WL 160666, at *2 (allowing access where "each of the [in-house counsel] is situated in such a way that if a future project were to present a conflict because of information that has been learned from discovery in

this lawsuit, the conflicting assignment could be rerouted to another individual not possessing the conflicting information."); Safe Flight, 682 F. Supp. at 23 (allowing access where counsel will be "segregated" in a way that avoids the possibility of conscious or unconscious abuse of confidential information).

Second, none of the cases that ScanSoft cites in its motion makes the distinction between "Confidential" and "Highly Confidential" information. ART has no issue with ScanSoft's in-counsel seeing "Confidential" information.[1] As the parties have agreed here, ScanSoft's in-house counsel will have access to ART's "Confidential" information and all non-confidential information. There is no need, however, for ScanSoft's in-house counsel to have access to all of ART's "Highly Confidential" information – information which includes, by definition, ART's commercially sensitive business information and documents.

Third, the U.S. Steel case cited by Scanoft is distinguishable from the facts here, since that case was at an advanced stage of litigation and exclusion of in-house counsel would have forced the party to retain new counsel. See U.S. Steel, 730 F.2d at 1468. To the contrary, the present case is in its early stages, and excluding ScanSoft's *in-house* counsel from access to ART's "Highly Confidential" information will have no impact on the ability of ScanSoft's *outside* counsel to try this case.

## II. THE PROTECTIVE ORDER AGREED TO BY THE PARTIES WILL NOT IMPACT SCANSOFT'S ABILITY TO LITIGATE THIS ACTION.

ScanSoft gives no real justification explaining why its in-house counsel must have access to ART's "Highly Confidential" in order to support this litigation. ScanSoft simply asserts that it needs the information to make "informed decisions about the handling of this case." ScanSoft's

---

[1] The parties have agreed that two "Permitted Representatives" of each party – including in-house counsel – *can* have access to each other's "*Confidential* Information."

Mem. Supp. Prot. Order at 7. ScanSoft fails to explain why the lack of access to ART's "Highly Confidential" information would deny it an adequate ability to make informed decisions about this case, particularly in light of the fact that (1) ScanSoft's in-house counsel will have access to ART's "Confidential" information and all non-confidential information; (2) ScanSoft's trial counsel (Bromberg & Sunstein LLP) and ScanSoft's independent experts will have access to ART's "Highly Confidential" information; and (3) the parties will be providing redacted copies of any pleadings filed under seal with the Court. Although it may be more convenient for ScanSoft's in-house counsel to review ART's "Highly Confidential" information, ScanSoft's trial counsel and its independent experts should be fully capable of doing so.

### III. IT WOULD BE UNFAIR AND PREJUDICIAL TO ART FOR THE COURT TO GIVE SCANSOFT INSIDE ACCESS TO ART'S "HIGHLY CONFIDENTIAL" INFORMATION, WITH NO RECIPROCAL RIGHT TO ART.

Under ScanSoft's proposed protective order, ART would have no reciprocal right to share "Highly Confidential" information with one of its own in-house representatives because ART does not have an in-house *lawyer*. Therefore, allowing ScanSoft's in-house counsel to have access to "Highly Confidential" information would be unfair and prejudicial to ART, e*specially considering that the parties are competitors*. Of course, ScanSoft's motion fails to address this point.

Incredibly, ScanSoft says that *it* would be prejudiced because its in-house counsel would only be able to review redacted copies of any pleading containing "Highly Confidential" information and filed under seal with the Court. The Court should recognize that this is exactly why the parties agreed to this provision – so that persons not having access to "Highly Confidential" information, including in-house counsel, would be able to review pleadings filed under seal with the "Highly Confidential" information redacted out.

## CONCLUSION

Based on reasons set forth herein and in ART's Motion for Entry of a Protective (Confidentiality) Order, the Court should deny ScanSoft's motion and enter the protective order that the parties have agreed on and is attached to *ART's* Motion for Entry of a Protective (Confidentiality) Order.

Respectfully submitted,

ART ADVANCED RECOGNITION
TECHNOLOGIES, INC.

By its Counsel,

/s/ Steven M. Bauer
Steven M. Bauer (BBO #542531)
Jeremy P. Oczek (BBO #647509)
PROSKAUER ROSE LLP
One International Place
Boston, MA  02110
Tel: (617) 526-9600
Fax: (617) 526-9899

Dated:  November 1, 2004

## Certificate of Service

I hereby certify that on November 1, 2004, a true and correct copy of the foregoing document was served upon opposing counsel by use of the Court's ECF system.

/s/ Steven M. Bauer
Steven M. Bauer