Not Reported in F.Supp.                                                                                                Page 1
1994 WL 177795 (S.D.N.Y.)
**(Cite as: 1994 WL 177795 (S.D.N.Y.))**

Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.

SULLIVAN MARKETING, INC., Plaintiff,
v.
VALASSIS COMMUNICATIONS, INC. and News America FSI, Inc., Defendants.
VALASSIS COMMUNICATIONS, INC., Counterclaim-Plaintiff,
v.
SULLIVAN MARKETING, INC., Counterclaim-Defendant,
and
Sullivan Graphics, Inc., Additional Counterclaim Defendant.
NEWS AMERICA FSI, INC., Defendant and Counterclaim-Plaintiff,
v.
SULLIVAN MARKETING, INC., Plaintiff and Counterclaim-Defendant,
and
Sullivan Graphics, Inc., Paul Moschetti, John Lang, Reid Wettersten, John Hendrickson, Walter Cohan, Marshall Johns, Patricia DeFazio and Lynne Tenhoopen, Additional Counterclaim Defendants.
**No. 93 CIV. 6350 (PKL).**

May 5, 1994.

Kenneth M. Kramer, Kathleen M. Comfrey, Sherman & Sterling, New York City.

Michael O. Finkelstein, Peter G. Farrell, Lord Day & Lord, Barrett Smith, New York City.

Gerald A. Novack, Eric T. Schneiderman, Kirkpatrick & Lockhart, New York City.

Joseph P. Cyr, Moran, Lewis & Bockius, New York City.

John H. Shenefield, Morgan Lewis & Bockius, Washington, DC.

Steven M. Edwards, Davis, Scott, Weber & Edwards, P.C., New York City.

MEMORANDUM AND ORDER
FRANCIS, United States Magistrate Judge.

*1 This is an antitrust action involving the publication of free-standing inserts ("FSIs"). FSIs are the advertising and coupon booklets inserted into newspapers for distribution to consumers. Sullivan Marketing, Inc. ("Sullivan"), Valassis Communications, Inc. ("Valassis"), and News America FSI, Inc. ("News America") were all publishers of FSIs during the relevant time period. Sullivan alleges that Valassis and News America operated as a duopoly in the FSI industry from 1988 until 1992, thereby violating the antitrust laws. Both of the defendants have asserted counterclaims against Sullivan. The picture is complicated by the fact that Sullivan is no longer in the FSI business. In February 1994, it transferred its contracts and sales agreements to News America. Nevertheless, it remains in an adversary position to News America in this litigation.

*Scope of the Dispute*

Currently before the Court is a dispute concerning the appropriate scope of a protective order governing the dissemination of documents exchanged in discovery. All parties agree that sensitive corporate documents may be deemed "confidential" and protected from disclosure to the general public. Certain corporate employees, including in-house counsel and designated financial officers, would be allowed to review such documents.

News America seeks increased protection for a group of documents that it characterizes as "restricted." Such documents would consist of: (1) contracts, proposals, negotiations or arrangements

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  
1994 WL 177795 (S.D.N.Y.)  
**(Cite as: 1994 WL 177795 (S.D.N.Y.))**

Page 2

of a party with its actual or potential customers in effect, or proposed to be in effect, after January 1, 1994; (2) any documents in which a party proposed, determined, or analyzed prices or terms of sale that were anticipated to be in effect after January 1, 1994; current or future strategic and marketing plans or proposals or financial projections relating to market activities anticipated to be in effect after January 1, 1994; (4) any proprietary market research or analysis conducted by or for any party for market activities anticipated to be in effect after January 1, 1994; and (5) any additional materials that are determined to be restricted by agreement of the parties or by order of the Court.

As to such restricted documents, News America asks that they be disclosed only to outside counsel, their employees, and consultants retained for the litigation. Valassis objects, arguing that it will be hindered in its trial preparation if its in-house counsel is not permitted to review such documents. Initially, Valassis also sought to have restricted documents made available to designated financial officers, but it is no longer pressing that demand. Valassis argues that it is particularly unjust for any such restrictive confidentiality order to apply to Sullivan documents, since News America is already privy to such documents by virtue of its acquisition of Sullivan's contracts.

*Discussion*

As a threshold matter, it should be noted that the information at issue here is properly the subject of some form of protective order. Rule 26(c)(7) of the Federal Rules of Civil Procedure provides that the court may enter an order "that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way." Though perhaps not on a par with a "secret formula," pricing and marketing strategies are widely held to be confidential business information that may be subject to a protective order. *See, e.g.,* *American Standard Inc. v. Pfizer Inc.,* 828 F.2d 734, 737, 740-41 (Fed.Cir.1987) (marketing plans, pricing information); *Gelb v. American Telephone & Telegraph Co.,* 813 F.Supp. 1022, 1034-35 (S.D.N.Y.1993) (revenue information).

**\*2** Though such information falls into a category that is traditionally protected, whether it merits protection in any particular case depends upon:

> (1) the extent to which information is known outside the business; (2) the extent to which information is known to those inside the business; (3) the measures taken to guard the secrecy of the information; and (4) the value of the information to the business and its competitors.

*Reliance Insurance Co. v. Barron's,* 428 F.Supp. 200, 203 (S.D.N.Y.1977). By these standards, News America has established its entitlement to a protective order. News America's pricing policies are revealed outside the corporation only to the extent that individual customers are aware of the prices quoted to them. These customers may sometimes disseminate this information to News America's competitors as leverage in negotiations, but the competitors would still obtain only a partial picture of News America's strategies. Within News America, such information is provided only to employees who have a need to know it. Furthermore, News America has sued former employees who have divulged such information after their departure. *See* Affidavit of Gerard A. Fragetti dated April 15, 1994 at ¶ 6. Finally, knowledge of News America's pricing and marketing plans would give its competitors an unwarranted advantage in the market.

This brings us to the critical issue: whether it is necessary to restrict dissemination of such confidential information to outside counsel, their staff, and specially retained consultants, or whether in-house counsel should be permitted access as well. Access to confidential information may not be denied solely because of an attorney's

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
1994 WL 177795 (S.D.N.Y.)
**(Cite as: 1994 WL 177795 (S.D.N.Y.))**

Page 3

status as in-house counsel. *See United States Steel Corp. v. United States,* 730 F.2d 1465, 1468-69 (Fed.Cir.1984); *Carpenter Technology Corp. v. Armco, Inc.,* 132 F.R.D. 24, 27 (E.D.Pa.1990). Nor should such access be permitted merely because in-house counsel is bound by the rules of professional responsibility, since there remains a risk of inadvertent use or disclosure of the information. *See Carpenter Technology,* 132 F.R.D. at 27. Rather, the decision turns largely on the specific role of in-house counsel within the business: whether he or she has a part in the type of competitive decision-making that would involve the potential use of the confidential information. *See United States Steel,* 730 F.2d at 1468 & n. 3; *Glaxo Inc. v. Genpharm Pharmaceuticals, Inc.,* 796 F.Supp. 872, 874 (E.D.N.C.1992); *Carpenter Technology,* 132 F.R.D. at 27. At the same time, consideration must be given to the extent that denial of access to in-house counsel will prejudice a party in its trial preparation. *United States Steel,* 730 F.2d at 1468.

In this case, the parties sharply disagree over the role of Barry P. Hoffman, General Counsel of Valassis. Mr. Valassis, a member of the bar of Pennsylvania and Michigan, was formerly a director of Valassis but is not now. Affidavit of Barry P. Hoffman dated April 21, 1994, ¶¶ 1, 3. Mr. Hoffman's duties at Valassis include furnishing legal advice to the company and managing its outside legal services. He also manages the corporate Human Resources Department, the corporate Services Department, and the corporate Security Department. Finally, he is involved in projects for the international expansion of the company. Hoffman Aff., ¶ 4. Mr. Hoffman states that he has no involvement in negotiating or setting of prices or other terms of sale of FSIs. He does draft and review FSI contracts negotiated by the Sales Division. Hoffman Aff., ¶ 5. Mr. Hoffman attests:

> *3 I do not participate in market strategy decisions except where legal issues are raised, nor is my advice requested on this subject. I have no input on matters relating to production or sales, except when a legal issue is raised, *e.g.,* a controversial advertisement.
>
> * * *
>
> During the price war with Sullivan I attended strategy meetings at which the discussions included pricing strategy in response to the Sullivan challenge. My input was limited to legal issues raised by the price war.

Hoffman Aff., ¶¶ 5, 6.

News America points out that while Mr. Hoffman may no longer be a director at Valassis, he is the corporate secretary. Affidavit of Donald C. Klawiter dated April 14, 1994, ¶ 3 & Exh. A at 27. Furthermore, Mr. Hoffman is entitled to substantial annual bonuses based on Valassis achieving certain cash flow targets. Klawiter Aff., ¶ 4 & Exh. A at 28.

Based on all of this information, I find that Mr. Hoffman is involved in Valassis' competitive decision-making to such a degree that he should be denied access to competitively sensitive data. First, as a general matter, Mr. Hoffman takes a more active role in management than many general counsel. He not only provides the legal advice, but he also manages specific departments. His managerial role is reflected in the fact that his compensation is linked to the business' profitability.

More important than his general status is Mr. Hoffman's specific involvement in competitive decisions. According to his own affidavit, he attended *strategy* meetings where pricing tactics were discussed during a price war-- meetings where knowledge of competitor's marketing plans would be particularly crucial. Though Mr. Hoffman states that his input was limited to legal issues, I am not sanguine that inadvertent disclosure could be avoided under such circumstances. It is often difficult to draw the line

Not Reported in F.Supp. Page 4
1994 WL 177795 (S.D.N.Y.)
**(Cite as: 1994 WL 177795 (S.D.N.Y.))**

between legal and business advice. Moreover, where advice on a seemingly legal issue such as an antitrust question is sought, counsel's intimate knowledge of a competitor's pricing policies could surely influence the nature of the advice given. "[I]t is very difficult for the human mind to compartmentalize and selectively suppress information once learned, no matter how well-intentioned the effort may be to do so." *F.T.C. v. Exxon Corp.,* 636 F.2d 1336, 1350 (D.C.Cir.1980). Given the extent of Mr. Hoffman's involvement in strategy meetings, such compartmentalization would be nigh impossible.

The prejudice that Valassis would suffer from the more restrictive confidentiality order would be minimal. Outside counsel has been involved in this litigation from the beginning and is fully familiar with the facts. Thus, this case is distinguishable from *United States Steel,* where the exclusion of in-house counsel at an advanced stage of the litigation would have forced the party to retain new counsel. 730 F.2d at 1468. Moreover, although the subject matter of this litigation may be complex, it is familiar territory for experienced antitrust counsel. There are, for example, no issues of advanced technology that might require in-house counsel to interpret technical documents. While it may be more convenient for in-house counsel to review pricing or marketing documents, outside counsel are fully capable of doing so.

**\*4** This analysis is not altered by the fact that in-house counsel for News America will have access to the Sullivan documents while Mr. Hoffman will not. No competitive inequity is created by this distinction; as the new owner of Sullivan's contracts, News America is entitled to its pricing information for business purposes while Valassis, still a competitor, is not. The only disadvantage Valassis suffers is in its trial preparation, since its in-house counsel has less information than News America's. But this disparity is minimal since outside counsel for all parties have access to the same data. Accordingly, no special provision need be made for the Sullivan documents.

*Conclusion*

For the reasons set forth above, News America's application for a protective order is granted, and access to certain sensitive information shall be restricted to outside counsel, their staff, and consultants retained for this litigation. News America shall submit a copy of its proposed order for my signature.

SO ORDERED.

1994 WL 177795 (S.D.N.Y.)

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.